J-S77044-14

2015 PA Super 72

R.S.,

            Appellant

            v.

T.T.,

            Appellee

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 2170 EDA 2014

Appeal from the Order entered June 19, 2014,
in the Court of Common Pleas of Delaware County,
Domestic Relations, at No(s): 2013-006464

BEFORE:  STABILE, JENKINS, and STRASSBURGER*, JJ.

OPINION BY STRASSBURGER, J.:　　　　　　　**FILED APRIL 10, 2015**

R.S. (Father) appeals from the final custody order entered June 19, 2014, in the Court of Common Pleas of Delaware County, which awarded primary physical custody of Father's minor son, E.S. (Child), to his mother (Mother) during the school year, and awarded Father and Mother shared physical custody during the summer months.  The order also awarded the parties shared legal custody.  We vacate and remand for further proceedings consistent with this opinion.

Child was born in December of 2007, as a result of Father's extramarital affair with Mother.  On June 19, 2009, Father filed a complaint for partial physical custody and shared legal custody of Child.  Father filed an amended complaint for custody on February 1, 2011, in which he requested

_____

* Retired Senior Judge assigned to the Superior Court.

shared physical custody of Child.  This culminated in a custody order entered October 3, 2011, which awarded the parties shared legal and physical custody. Subject to a special schedule for vacations and holidays, Father was granted physical custody of Child each week from 8:00 a.m. Monday morning until 6:00 p.m. on Wednesday.  Father also was granted physical custody on alternating weekends.

On June 28, 2013, Mother filed a petition to modify the custody order, in which she requested that she be granted primary physical custody of Child. Father filed a petition to modify the existing custody order on July 23, 2013, in which he requested primary physical and legal custody of Child.  A custody trial was held on April 28, 2014.  Following the trial, by order entered June 24, 2014, the trial court granted Mother primary physical custody of Child.  Subject to a holiday, birthday, and vacation schedule, Father was awarded partial physical custody of Child each Wednesday during the school year from 4:00 p.m. until 7:00 p.m., and on alternating weekends from Friday after school until Sunday at 8:00 p.m.  During the summer months, Father was awarded shared physical custody on alternating weeks.  Mother and Father retained shared legal custody.

Father timely filed a notice of appeal on July 15, 2014.  However, Father failed to file concomitantly a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).  Father later filed a concise

statement on July 29, 2014. Father filed an amended notice of appeal the following day.[1, 2]

Father now raises the following issues for our review.

1. Should this Court vacate the lower court's final custody order because it was based on unreasonable conclusions relative to the Child's need for stability, and therefore does not further the best interest of the Child, because:

> a) The court's most important conclusion (relative to [Child's] commuting time) was not supported by any evidence and was thus not a sustainable finding;

> b) The court's order was unreasonable because it failed to address the fact that the Child will now be deprived of Father's care for extended periods during the school week, which is particularly problematic in light of the court's simultaneous conclusion that Mother will not further the Child's relationship with Father?

Father's Brief at 4.

We address Father's claims mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to

---

[1] As Mother has not objected to this late filing or claimed any prejudice, we have accepted Father's concise statement in reliance on our decision in **In re K.T.E.L.**, 983 A.2d 745, 748 (Pa. Super. 2009) (holding that an appellant's failure to comply strictly with Pa.R.A.P. 1925(a)(2)(i) did not warrant waiver of the appellant's claims, as there was no prejudice to any party).

[2] Father amended his notice of appeal to indicate that this is a Children's Fast Track appeal.

the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338. "The best[-]interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)).

The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

-4-

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).[3]

Instantly, the trial court considered the Section 5328(a) custody factors, and concluded that factors 1 and 12 favored Father, while factors 2, 3, 4, and 10 favored Mother. Final Custody Order, 6/24/2014, at 4-7 (unnumbered pages). The court also found that factors 5, 6, 7, 8, 9, 13, 14, and 15 did not favor either party and that, because the parties live 14 miles apart, factor 11 "favors a non-shared custody schedule." *Id.* at 5-7.

In response, Father contends that the trial court abused its discretion by concluding that factor 4 favored Mother. Father's Brief at 13-15. Father directs our attention to the following discussion of this factor from the trial court's final custody order.

> *The need for stability and continuity in the child's education, family life and community life*: This factor favors Mother. The [c]ourt is very cognizant that stability and continuity are important to the [C]hild's best interest, which would favor keeping the shared custody schedule in place. However, the [c]ourt believes that positive benefits the [C]hild will receive from Mother having primary physical custody outweigh the benefits of maintaining the status quo in this case. The [C]hild will benefit from being with Mother primarily during the school week. [Child] already has friends at his current school district where Mother resides. The [c]ourt believes it is in the [C]hild's best interest to remain in his current school district. Father testified that he believes [Child's] current school is a good school for the [C]hild. Both parties agree that the current schedule requires the [C]hild to be driven in a vehicle back and forth too

---

[3] Section 5328 has been amended to include an additional factor at 23 Pa.C.S. § 5328(a)(2.1). Because Mother's petition to modify custody order was filed prior to January 1, 2014, the effective date of Section 5328(a)(2.1), that factor does not apply to this case. *See* § 6 of 2013, Dec. 18, P.L. 1167, No. 107, effective January 1, 2014.

frequently and that time spent doing this is not in the best interest of the [C]hild. The [c]ourt finds that the [C]hild should be primarily with one parent during the school week so that he can establish a routine, but that the parties should have custody in the summer, on an alternating week basis, to minimizing [*sic*] the time [Child] must ride in a car back and forth.

Final Custody Order, 6/24/2014, at 5 (citation omitted, unnumbered pages).

Father argues that the court's finding that "[b]oth parties agree that the current schedule requires the [C]hild to be driven in a vehicle back and forth too frequently and that time spent doing this is not in the best interest of the [C]hild" is not supported by the record, and requires reversal. Father's Brief at 13-16. Father contends that "[t]here was no testimony adduced relative to the effect that the commute of [Child] was detrimental to him. Moreover, the record is devoid of any evidence that the 'parties agreed' to such a proposition." *Id.* at 14. Father also argues that the trial court abused its discretion by failing to "consider the effects of depriving [Child] of his Father during the school year," particularly in light of the court's conclusion that factor 1, concerning which party is more likely to encourage and permit frequent and continuing contact between the child and the other party, favored Father. *Id.* at 14, 16-18.

An examination of the trial court's analysis in light of the record before us, accepting the trial court's factual findings and credibility determinations, leads us to conclude that several of the trial court's conclusions are unreasonable under the circumstances of this case, and ultimately, the trial

court abused its discretion in awarding Mother primary physical custody of Child during the school year.

As noted, the main reason Mother sought a change in custody is that Child will be starting elementary school and she believes that Child would be better off living with a single parent in order to establish a more stable routine. ***See*** Petition to Modify Custody Order, 6/28/2013, at 2 (unnumbered pages) ("Mother contends that shuttling [Child] back and forth each mid-week between his parents will not be beneficial to [Child] once he enrolls in regular school as the same would be disruptive, confusing and detrimental."). Mother explained as follows.

> A. It's just going to make it a lot more difficult and hard than it has to be. It's unnecessary. It's going to put obstacles in front of [Child's] education because it's going to be confusing and detrimental and it's going -- that stability won't be there. So he needs one primary home base where he can get a structured routine, so that he can focus and concentrate on his studies and his academics without being shuttled back and forth. Because if you shuttle back and forth, it's just going to disrupt things and projects will be due again, and then second grade, third grade, fourth. It's going to get -- I mean, I've graduated. I've gone to Penn State. It gets harder and harder, the higher up you go. So the more prepared, the more stability, the more structured that home base is and -- he can't have that with having two home bases….

> ***

> ….my only concern is that during the school weeks, the school term, so that he can get that structure and get a routine, and get -- and the emotional and the psychological also impacts of it, too, the extracurricular activities. That school has a lot of events and things going, so it's just he needs that stability and that structure now. If we continue as it is, as it goes, it will just get

more and more disruptive and more confusing and more detrimental and his education will suffer.

N.T., 4/28/2014, at 157-59.

Mother's concerns, while well-meaning, do not require modification of the 2011 shared physical custody order. We agree with Father that there appears to be no evidence of record indicating that he agreed that Child was being driven back and forth too frequently, or that Child's time in transit was not in his best interest. To the contrary, the trial court acknowledged in its opinion that Father "submitted a post-trial proposed order requesting a schedule of shared physical custody. The proposed schedule for shared physical custody was the same as the schedule established by the Order in custody dated October 3, 2011." Final Custody Order, 6/24/2014, at 2 (unnumbered pages). This is consistent with the argument of Father's counsel prior to trial, and with Father's testimony, that Father would accept a shared physical custody arrangement in lieu of primary physical custody if the court would include "some caveats" in the custody order to prevent Mother's alleged attempts at alienating Child from Father. N.T., 4/28/2014, at 13, 302.

Additionally, the record does not support the trial court's conclusion that the distance between the parties' residences militates against a shared custody arrangement. Mother testified that she lives within 2 miles of Child's school, *id.* at 53, and that Father lives approximately 14 miles away. *Id.* at 54. She testified that she drives Child to school during her periods of

custody. ***Id.*** at 48. According to Mother, it would take Father about 35 or 40 minutes to transport Child from Father's home to school and/or her home. ***Id.*** at 54. Father disputed this claim, stating that the drive took him only 20 minutes and, sometimes, only 15 minutes. ***Id.*** at 281. Father testified that, under the 2011 custody schedule, he picks up Child directly from school on Monday and Tuesday, and he is willing to continue doing so. ***Id.*** at 272, 280. Additionally, Father also expressed a willingness to allow Child to participate in a baseball league near Mother and to attend those games. ***Id.*** 333-34.

Nothing presented by Mother convinces us that a change to primary custody is necessary here. Even if we could infer that the trial court was concerned with the amount of time Child would spend being driven to school from Father's residence each day, rather than the time being driven to and from custody transfers, it was an abuse of discretion for the court to conclude that Father's time with Child should be limited based on the slight unpleasantness Child may experience as a result of a, at maximum, 35 to 40 minute car ride.[4]

Based on the foregoing, we find that the trial court abused its discretion in determining that a shared custody schedule would limit Child's ability to remain in Mother's school district, participate in activities there,

---

[4] Arguably, in light of the parties' relative close proximity to one another and their willingness to drive Child to school during their periods of custody, the transportation issues that concern the court could be resolved by implementing a week on/ week off custody schedule.

- 10 -

and maintain his established friendships. Accordingly, we reject the court's conclusion that Child's entrance into full-day schooling requires that one parent must have primary physical custody so that Child may establish a routine. This is the situation faced by every set of parents of a school-aged child, and does not present a special circumstance requiring a primary custody arrangement. To the contrary, this Court has long held that

> [i]n determining whether to award shared [] custody, the trial court must consider the following factors: (1) whether both parents are fit, capable of making reasonable child rearing decisions, and willing and able to provide love and care for their children; (2) whether both parents evidence a continuing desire for active involvement in the child's life; (3) whether the child recognizes both parents as a source of security and love; and (4) whether a minimal degree of cooperation between the parents is possible.

**Yates v. Yates**, 963 A.2d 535, 542 (Pa. Super. 2008), *quoting* **In re Wesley J. K.**, 445 A.2d 1243, 1249 (Pa. Super. 1982). The record herein demonstrates that all four of the preceding factors have been met such that shared legal and physical custody of Child is in his best interest.

Finally, we note the "[i]n a case which presents the possibility of a change in custody, it is incumbent on the court to fully discuss the possible effect on the child of the proposed transfer of custody." **E.A.L. v. L.J.W.**, 662 A.2d 1109, 1117 (Pa. Super. 1995) (quotation and citation omitted). **See also Masser v. Miller**, 913 A.2d 912, 921 (Pa. Super. 2006) (quoting **Johns v. Cioci**, 865 A.2d 931, 937 (Pa. Super. 2004)) ("The court must give attention to the benefits of continuity and stability in custody arrangements

- 11 -

and to the possibility of harm arising from disruption of longstanding patterns of care.").

In the instant case, there is no discussion by the trial court about the possibility of harm to Child in uprooting him from the care pattern he has known from a young age. We agree with Father that the trial court's decision is rendered more problematic by the conclusion that Mother is less likely than Father to encourage Child's relationship with the other parent. The court's decision dramatically reduces Father's custodial time with Child during most of the year, and may result in considerable damage to Child's relationship with Father, despite the court's conclusion that Father is a capable parent.

Accordingly, because we conclude that the trial court abused its discretion by awarding Mother primary physical custody during the school year, we vacate the trial court's order and remand this case for the court to enter a new custody order awarding both parties shared physical custody.

Order vacated. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2015