J-A03017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.J.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| D.H.M. | : | |
| | : | |
| Appellant | : | No. 1409 MDA 2016 |

Appeal from the Order Entered July 26, 2016
in the Court of Common Pleas of Lackawanna County
Civil Division at No:  2014-FC-41475

BEFORE:   LAZARUS, STABILE, and DUBOW, JJ.

MEMORANDUM BY STABILE, J.:                          **FILED MARCH 30, 2017**

D.H.M. ("Mother") appeals from the July 26, 2016 order denying her petition to modify the existing custody order with respect to the female child, S.M. ("Child"), born in August of 2013.  Upon careful review, we affirm.

We summarize the relevant factual and procedural history as follows. Mother and J.J.M. ("Father") are Child's natural parents.  On November 10, 2014, the underlying custody action was initiated by Father, along with a divorce action.  By agreed-upon order dated January 15, 2015, when Child was seventeen months old, the parties shared legal and physical custody of Child by alternating every two to three days per week and on weekends.

On March 2, 2016, the trial court issued a Protection from Abuse ("PFA") order against Father prohibiting him from contacting Mother except by text message with regard to the health and welfare of Child.[1,2] In addition, the PFA order directed that Child's paternal grandmother transport her to the custody exchanges between Mother and Father. Trial Court Opinion, 7/26/16, at 3. Further, the PFA order required Father to attend anger management and domestic violence classes. N.T., 6/17/16, 50.

On March 8, 2016, Mother filed a petition to modify the January 15, 2015 custody order. Mother requested sole legal and primary physical custody, and that Father be granted supervised partial physical custody. Further, Mother requested that Father contact her only in the event of a medical emergency when he is the custodial parent *via* text message through a smartphone application such as Family Wizard, *inter alia*. Trial Court Opinion, 7/26/16, 4.

The trial court held a hearing on April 20 and June 17, 2016, during which Mother testified on her own behalf and presented the testimony of Marie Lena, M.D., Child's pediatrician; A.Z., a seventeen-year-old female and friend of the family; H.M., Father's stepmother; and Susie Howells, Mother's friend. Father testified on his own behalf and presented the

---

[1] The Honorable Andrew J. Jarbola, III, presided over the PFA proceedings and the subject custody proceedings.

[2] The PFA order expires on March 2, 2019.

testimony of Amy White, his neighbor, and A.M., Child's paternal grandmother.

Mother testified that she requested supervised partial physical custody for Father due to differences in age-appropriate parenting techniques such as potty training, Father's alleged "germaphobia," and Father's anger. N.T., 4/20/16, at 72-74. Mother testified that she requested sole legal custody due to their differences of opinion regarding Child's medical care.[3] *Id.* at 75-77.

Importantly, Mother and Father testified that the arrangement provided in the PFA order for paternal grandmother to transport Child to and from custody exchanges is going well. N.T., 4/20/16, at 88, 90, 93; N.T., 6/17/16, at 54-55. Father agreed on direct examination that Child does not see any conflict between him and Mother as a result. N.T., 6/17/16, at 55. Further, Father testified that he had been attending anger management and domestic violence classes pursuant to the PFA order for ten weeks at the time of the subject proceedings. *Id.*

By order dated July 26, 2016, the trial court denied Mother's petition. In addition, the order provided the January 15, 2015 custody order remains

---

[3] Child suffers from allergies and asthma, and she had Respiratory Syncytial Virus ("RSV") in January of 2015. N.T., 4/20/16, at 14, 24-25. Father testified that Child had RSV a second time within two months before the subject proceedings. N.T., 6/17/16, at 63.

in full force and effect, except for paragraphs 5, 9, 11, and 13.[4]   Mother

timely filed a notice of appeal and a concise statement of errors complained

of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother presents the following issue for our review:

1. Whether the trial court, by [o]rder dated July 26, 2016, erred as a matter of law and abused its discretion in ordering that Mother and Father exercise shared legal and physical custody of the minor child, and not awarding Mother primary physical custody and sole legal custody, when the Father cannot sustain a minimal degree of cooperation with Mother?

Answer: The trial court did not address the question regarding whether the parties could sustain a minimal level of cooperation.

Mother's brief at 4.

We review Mother's issue according to the following scope and

standard of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . .   However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . .   Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

---

[4] Upon review, paragraphs 5, 9, 11, and 13 of the existing custody order involved communication between the parties, and, therefore, the paragraphs were inconsistent with the PFA order.

> **R.M.G., Jr. v. F.M.G.**, 2009 PA Super 244, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting **Bovard v. Baker**, 2001 PA Super 126, 775 A.2d 835, 838 (Pa. Super. 2001)).  Moreover,
>
>> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>>
>> The parties cannot dictate the amount of weight the trial court places on evidence.  Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.
>
> **R.M.G., Jr., supra** at 1237 (internal citations omitted).  The test is whether the evidence of record supports the trial court's conclusions.  **Ketterer v. Seifert**, 2006 PA Super 144, 902 A.2d 533, 539 (Pa. Super. 2006).

**A.V. v. S.T.**, 87 A.3d 818, 820 (Pa. Super. 2014).

The primary concern in any custody case is the best interests of the child.  "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing."  **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004).

Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321-5340, which became effective on January 24, 2011. Trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order."  **J.R.M. v. J.E.A.,** 33 A.3d 647,

652 (Pa. Super. 2011) (emphasis in original). This statutory section provides as follows.

### § 5328. Factors to consider when awarding custody.

(a) *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

We have further explained as follows.

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M.*

- 7 -

> *v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V.*, *supra* at 822-823.

However, in this appeal, Mother baldly asserts that trial courts "must consider" the following four factors "*before* analyzing the best interests of the child under 23 Pa.C.S.[A.] § 5328[(a)]" in determining whether to award shared custody:

> (1) whether parents are fit, capable of making reasonable child-rearing decisions, and willing and able to provide love and care for their children; (2) whether both parents evidence a continuing desire for involvement in the child's life; (3) whether the child recognizes both parents as a source of security and love; and (4) whether a minimal degree of cooperation between the parties is possible.

Mother's brief at 13 (emphasis added) (citing *R.S. v. T.T.*, 113 A.3d 1254, 1260 (Pa. Super. 2015) (internal quotations omitted)).

Mother argues that the certified record demonstrates that Father "cannot sustain a minimal level of cooperation with" her. Mother's brief at 15. In essence, Mother argues that the court failed to give determinative weight to the parties' alleged inability to sustain a minimal degree of cooperation. Therefore, she argues that the court committed an error of law and abused its discretion in maintaining shared legal and physical custody between the parties. We reject Mother's claims.

It is well-established that, prior to the January 24, 2011 effective date of the Act, trial courts were required to consider the foregoing four factors

before awarding shared custody. **See Johnson v. Lewis**, 870 A.2d 368, 376 (Pa. Super. 2005) (citing **Wiseman v. Wall**, 718 A.2d 844, 848 (Pa. Super. 1998)). In her brief, Mother relies solely on **R.S. v. T.T.**, **supra**, a case decided well after the effective date of the Act, for her contention that trial courts must consider the foregoing four factors before analyzing the Section 5328(a) best interest factors. We disagree.

In that case, the trial court considered all of the statutory best interest factors and concluded that they favored modifying the existing order, whereby the parties shared custody of their child, and granted the mother primary physical custody during the school year. This Court determined that the court's conclusions pursuant to Section 5328(a) were unreasonable based on the record evidence. We specifically rejected the court's conclusion that the child's commencement of full-day schooling "requires that one parent must have primary physical custody so that [the c]hild may establish a routine." **R.S. v. T.T.**, **supra**, at 1260. Further, we observed that this Court has long held that courts must consider the foregoing four factors in determining whether to award shared custody, and those factors were met in that case. **Id.** (citing **Yates v. Yates**, 963 A.2d 535, 542 (Pa. Super. 2008) (quoting **In re Wesley J.K.**, 445 A.2d 1243, 1249 (Pa. Super. 1982)). Nevertheless, we did not hold or even state in *dicta* that courts must consider the foregoing factors before considering the Section 5328(a)

best interest factors, or give the foregoing four factors determinative weight, when deciding whether to award shared custody.

Moreover, in **M.J.M. v. M.L.G.**, 63 A.3d 331, 338 (Pa. Super. 2013), we explained that Section 5328(a) expressly states that, "all relevant factors shall be considered by the trial court, and the only factors that should be given 'weighted consideration' are factors that 'affect the safety of the child'. . . ." **Id.** at 338 (quoting 23 Pa.C.S.A. § 5328(a)). As such, in that case, we rejected the mother's argument that the trial court erred in failing to give positive weight to her role as primary caregiver of the child. Indeed, we determined that the Act no longer requires the trial court to give positive emphasis to a parent's status as the primary caregiver. **Id.** at 339. Further, we determined that the considerations relevant to the primary caretaker doctrine had been incorporated into the Section 5328(a) factors that the trial court must consider in making a custody determination. **Id.**

Likewise, in the instant matter, we conclude that the Act no longer requires the trial court to give determinative weight to the foregoing four factors in deciding whether to award shared custody. **See J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (holding that the trial court erred as a matter of law in basing its decision "almost exclusively on the fact that Child is breastfeeding and *the parties' difficulty communicating with each other"* and in failing to properly consider the Section 5328(a) factors) (emphasis added). Further, we conclude that the four factors are incorporated into the

Section 5328(a) factors. Specifically, the fourth factor, whether a minimal degree of cooperation is possible between the parties, is incorporated into Section 5328(a)(13), which requires the trial court consider "[t]he level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. . . ." 23 Pa.C.S.A. § 5328(a)(13).

Instantly, the trial court, in considering Section 5328(a)(13), found that there is "a marked level of conflict between the parties." *Id.* at 10. However, the court found that the "March 2, 2016 PFA [order] remains in existence until March 2, 2019, which prevents contact between the parties. The PFA [order] states that there may be limited texting only regarding the health and welfare of the minor child." *Id.* (citations to record omitted). As such, the court concluded that Section 5328(a)(13) did not weigh in favor of either party.

Mother argues that, "[a]lthough the [PFA] order allows Father to text message Mother regarding the health and welfare of the minor child, neither parent had texted the other since the [PFA] order was granted. Rather, all communication between the parties is through a third party, the paternal grandmother." Mother's brief at 16. As such, she asserts that she and Father "have no basic level of cooperation as they currently do not communicate at all." *Id.* Significantly, there is no testimonial evidence that the parties needed to contact one another regarding Child's health and

welfare since entry of the PFA order. Therefore, we reject Mother's argument.

Further, Mother relies on our decision in **Wiseman v. Wall**, **supra**, wherein we found the parents had less than minimal "communication and cooperation concerning [the child] . . . , and primarily through third persons." **Id.** at 849. We found it significant that the parents had never married, that the father had "only acknowledged paternity when confronted by blood test results," and that the parents had no history of communicating with respect to the child except through legal papers and third parties. **Id.** at 848-849. As such, we concluded that the record did not support the order awarding shared custody.

In contrast, in **Johnson v. Lewis**, **supra**, this Court found there was evidence of some basic cooperation between the parents, who were once married. Specifically, we found that they had arranged visitation between the father and the child shortly after their separation; had spoken on the telephone about the child's health and welfare; and had attended an appointment at the pediatrician's office together. **Id.** at 376.

Mother distinguishes **Johnson** by asserting that, although she and Father entered into a shared custody arrangement after their marital separation, "she only did so because Father had denied her access to their daughter for three weeks, and she did not have legal representation." Mother's brief at 15. Further, Mother asserts that she and Father have not

been able to attend appointments at the pediatrician's office together "without incident." *Id.* We disagree.

During cross-examination, Mother testified that she agreed to shared custody in January of 2015 because she did not have an attorney, and because she had not seen Child "for about three weeks because [Father] had her." N.T., 4/20/16, at 95. She continued, in part, "I was in the mindset that I wanted to see my baby. That's why I signed the 50/50 [custody agreement]. And I [] believe[d] that [Father] would be a good parent." *Id.*

Upon review, Mother and Father abided by the shared custody arrangement for approximately fourteen months until the time she filed the subject petition to modify it. Like in *Johnson v. Lewis*, *supra*, we deem the January of 2015 agreed-upon custody order evidence of basic cooperation between Mother and Father.

With respect to attending pediatrician appointments, Dr. Lena testified regarding the most recent visit when Mother and Father attended together. Dr. Lena testified that Father argued in the examining room with her as well as with Mother, and that Mother and Child appeared afraid. N.T., 4/20/16, at 16-18. However, Dr. Lena acknowledged on cross-examination that Father is "very attentive" to Child's health, and that he is not a threat to Child. *Id.* at 28.

We conclude that our decision in *Wiseman v. Wall*, *supra*, is not controlling in this matter. We deem this matter more akin to our decision in

***Johnson v. Lewis***, ***supra***.  Like in that case, Mother and Father had been married, and a history existed, however minimal, of basic cooperation between them.[5]

Furthermore, we conclude that the PFA order allows for a minimal degree of cooperation between Mother and Father necessary for Child's best interest.  Significantly, Mother and Father acknowledged that the arrangement set forth in the PFA order was successful at the time of the custody hearing.  N.T., 4/20/16, at 88, 90; N.T., 6/17/16, at 54-55.  Father specifically agreed on direct examination that Child does not see any conflict between him and Mother as a result of the PFA order.  N.T., 6/17/16, at 55.  In addition, the trial court noted "a change in Father since beginning both anger management and domestic violence classes as required under the March 2, 2016 . . . PFA [order]."  Trial Court Opinion, 7/26/16, at 12.  Therefore, we discern no abuse of discretion with respect to the trial court's findings pursuant to Section 5328(a)(13).  ***See K.T. v. L.S.***, 118 A.3d 1136, 1161 (Pa. Super. 2015) (citing ***Nancy E.M. v. Kenneth D.M.***, 462 A.2d 1386, 1388 (Pa. Super. 1983) (stating, "in the context of custody proceedings, '[h]ostilities between the [parties] are relevant only insofar as they constitute a threat to the child or affect the child's welfare'")).

---

[5] Father's divorce action remained pending at the time of the subject proceedings.  N.T., 4/20/16, at 88.

It is important to note that, had the trial court granted Mother's request for sole legal and primary physical custody and for Father to be granted supervised partial custody, the parties' level of conflict and willingness to cooperate with one another likely would have increased to the detriment of Child.

In this case, the trial court weighed all of the Section 5328(a) best interest factors equally between the parties except for Section 5328(a)(15), the mental and physical condition of the party, which the court found weighs in favor of Mother. The court found, in relevant part:

> There was much testimony presented regarding Father's alleged germaphobia and anger issues. Specifically, Dr. Marie Lena testified that during doctor[] visits, Father holds the child the entire time, requests unnecessary procedures, and brings his own wipes to clean the exam table. Family friend [A.Z.] testified that when she would visit the [parties'] household, Father would make them sanitize and wash their hands about two (2) or three (3) times before meals, and that he would frequently sanitize door knobs in the home. Next, Father's stepmother [H.M.] testified "that Father is worried about "germs, fleas, ticks, germs, dirt of any kind." [H.M.] further testified that she has concerns due to Father's excessive behaviors and shortness of temper. Mother testified that she is worried that Father's germaphobia will delay minor child mentally and physically because it is not allowing minor child to be independent. As part of the [] PFA [order], Father was ordered to attend anger management class and domestic violence class. While there is a concern regarding Father's anger issues and germaphobia, this [c]ourt sees a difference in Father's overall demeanor from the initial PFA hearing.
>
> . . .
>
> This [c]ourt believes that Father struggles with issues pertaining to anger, and therefore finds that this factor weighs in Mother's favor. However, the [c]ourt also sees a change in Father since

beginning both anger management and domestic violence classes as required under the March 2, 2016 . . . PFA [order].

Trial Court Opinion, 7/26/16, at 11-12 (citations to record omitted). In short, the court found that Father's mental condition, or anger, will not "get in the way of [his] parental duties." *Id.* at 12. We discern no abuse of discretion by the court in the weight that it placed upon Section 5328(a)(15).

The court found determinative Section 5328(a)(4), the need for stability and continuity in the child's education, family life, and community life. The court found that "the current alternating schedule providing the parties with shared physical custody is in the best interests of the minor child because of the schedule in which she has become accustomed. Therefore, the [c]ourt believes it is in the minor child's best interest that the current custody schedule adopted . . . in the January 15, 2015 [o]rder remain in full force and effect." Trial Court Opinion, 7/26/16, at 8. Based on the testimonial evidence, we discern no abuse of discretion by the trial court in its findings and the weight it applied to the Section 5328(a) factors. Because the court carefully and thoroughly considered Child's best interests, and the record supports the court's custody decision, we affirm the order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/30/2017