J-A34002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| J.A.S., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| L.A.S., | |
| Appellant | No. 1347 MDA 2015 |

Appeal from the Order entered July 7, 2015
in the Court of Common Pleas of Dauphin County
Civil Division, at No(s): 2014-CV-5601-CU

BEFORE: PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J.                    **FILED FEBRUARY 17, 2016**

L.A.S. ("Mother") appeals the order of the Court of Common Pleas of Dauphin County, entered July 7, 2015, that denied her permission to relocate with her two children to the Lehigh Valley, and granted J.A.S. ("Father") shared physical custody and shared legal custody of the parties' minor children, E.S. (born in June 2008) and L.S. (born in February 2010) ("Children"). We affirm.

Mother and Father married in 2008 and lived in Allentown, Pennsylvania at the time. Shortly after L.S. was born, the parties relocated to the Harrisburg area because Father accepted a full-time job with the Pennsylvania Air National Guard in Middletown, Pennsylvania. Mother was working part-time as a registered nurse at St. Luke's Hospital in Bethlehem, Pennsylvania. Mother continued to work at St. Luke's Hospital while the

family resided in the Harrisburg area. The Children continued to spend significant time in the Lehigh Valley as Mother would often bring the Children with her when she traveled to work. The Children were cared for by maternal grandmother and paternal grandmother, both of whom reside in the Lehigh area.

Mother and Father separated in May 2012 and Father moved from the marital residence in July 2012. Mother and Father divorced in December 2012. Following the separation and divorce, Mother and the Children continued to live in the marital residence in Palmyra, Pennsylvania, as per the pre-nuptial agreement, and Father moved to suburban Harrisburg.

E.S. is currently seven years old and has completed first grade at East Hanover Elementary School. L.S. is currently five years old and attends preschool at Grantville Nursery School. Due to the Children's young ages, the trial court did not interview them.

On June 11 and 12, 2015, the trial court conducted a custody hearing in which both parents testified. The following people testified: Arnold Shienvold, Ph.D., a licensed psychologist with Reigler, Shienvold, and Associates; K.E., Mother's friend; P.P., Mother's boyfriend; D.P., ("Maternal Grandmother"); C.S., Father's work supervisor; T.D., a vocational expert; K.B., Mother's neighbor; C.P., Father's girlfriend; and D.S., ("Paternal Grandmother").

Dr. Shienvold performed a custody evaluation of the parties dealing with the major issue of whether Mother should be permitted to relocate to the Lehigh Valley area. Dr. Shienvold assessed the family using a number of factors that have been identified through research and literature on relocation. Dr. Shienvold recommended that Mother not relocate and that the Children remain in the Harrisburg area. He found that there is no indication that the Children's lives would be significantly improved if Mother were permitted to relocate to the Lehigh Valley area. In addition, Dr. Shienvold testified that, if relocation is granted, the distance between the parties would cause Father's level of involvement with the Children's lives to decrease. Dr. Shienvold opined that the best interest of the Children would be served by having both parents remain in the Harrisburg area and involved in the Children's lives. When asked to make a recommendation for a custodial arrangement in the event that Mother were permitted to relocate, Dr. Shienvold opined that the Children should remain in Harrisburg with Father.

Mother testified that she currently resides in Palmyra and works at St. Luke's Hospital in Bethlehem as an operating room nurse. Mother is required to work nine twelve-hour shifts during a six-week period and testified that she has the flexibility to set up her own schedule. Mother also testified that she could pick up extra shifts during the week if they were available. Mother began working at St. Luke's Hospital in 2002 and has continued working

there. Mother requested permission to relocate to the Lehigh Valley area because of work, family, and her current relationship with P.P. Mother also testified that jobs in the Harrisburg area are not comparable to her current job because of her pay, her ability to make her own schedule, her retirement account, and the availability of family to provide childcare.

Mother also noted that she wished to relocate to the Lehigh Valley area because a majority of her family, and some of Father's relatives, reside there. Mother noted that she takes the Children to the Lehigh Valley during her custodial weekends and, if she is working, Maternal Grandmother, P.P. or her sister cares for them. Mother noted that, if she were permitted to relocate, she would continue to utilize her family for childcare.

Mother also alleged that she wishes to relocate because her current boyfriend, P.P., lives in Philipsburg, New Jersey. Mother testified that she and P.P. have been dating for two years and are planning to get married and purchase a home together. Mother stated that those plans have been put on hold pending the outcome of the current custody action. P.P. currently commutes to New York City for work and also has a child of his own who lives in Phillipsburg. Therefore, P.P. is prevented from moving to the Harrisburg area.

On Mother's custodial weekends, she and the Children frequently stay at P.P.'s home. Mother testified that the Children have made friends in P.P.'s neighborhood. P.P. testified that he sees the Children every Friday and the

Children even have their own room in his home. Mother was unable to specifically identify a school district in which she wishes to relocate. She testified that she and P.P. have looked at homes in a number of areas, but have not settled on one area in particular.

Mother requests primary custody with permission to relocate, and proposes that Father have custodial time from Friday after school until Sunday for three weekends a month during the school year. During the summer, Mother proposes a shared physical custody schedule where Father has custody from Saturday to Tuesday, or Wednesday if Father is off from work and every other week.

Father testified that he currently resides in the Central Dauphin School District, and works at the Pennsylvania Air National Guard base in Middletown. Father's current work schedule is 6:00 a.m. until 4:00 p.m. Thursday through Saturday, plus every other Wednesday and Sunday during drill weekends. In addition, if Father is working as flight chief or in armor, he must report to work between 5:00 a.m. and 5:30 a.m. Father's supervisor testified that Father can only adjust his current schedule under special circumstances.

Currently, Father's custodial periods occur when he is not working and he is able to care for the Children himself. Father's girlfriend, C.P., helps out some Sundays when she has her children and Father testified that the children get along well together. Father also testified that he and C.P.

became close because they were going through similar issues and have been dating for a year and a half. C.P. lives in her own home, but Father testified that they plan on moving their relationship forward once the respective custody issues have been settled.

Father is actively involved in the Children's lives and attends their activities when possible. Father testified that, if the activity occurs while he is working, he tries his best to accommodate it. Father also testified that he attends as many medical appointments as his schedule allows. However, Mother usually attends all of the Children's medical appointments, as her schedule allows her to be available during the week.

Father testified that he opposes Mother's request for relocation because it would significantly impair his ability to stay involved in the Children's lives. Father also noted that he has concerns with Mother's past relationship history as it has led to instability and questions her motives for relocation. Father is requesting that Mother not be permitted to relocate, and that the parties share physical custody. In the event that Mother is permitted to relocate, Father is requesting primary physical custody of the Children. Father testified that, if he were awarded primary physical custody, the Children would attend Mountainview Elementary School in the Central Dauphin School District. In addition, Father testified that he would request that his work schedule be changed to a weekly schedule of four ten-hour day shifts.

Father also stipulated that he would utilize childcare on the days that he works and, if available, would drive the Children to school. In addition, C.P. would be able to provide childcare for the Children if needed. C.P. works for the Department of Veterans Affairs from 7:15 a.m. until 3:30 p.m. Monday through Friday. Paternal Grandmother also testified that she is thinking about retirement and would be available to assist Father.

The trial court denied Mother's request for relocation to the Lehigh Valley and granted Father shared physical custody and legal custody. This timely appeal followed.

On appeal, Mother raises four issues.

1. Did the trial court commit an abuse of discretion and an error of law by denying Mother's request to relocate with Children from Harrisburg, Pennsylvania, to the Lehigh Valley area, where denial of Mother's request to relocate was not in the best interest of the Children under the factors provided by 23 Pa.C.S. § 5328(a), 23 Pa.C.S. § 5337(h), and Pennsylvania case law?

   A. Whether the trial court committed reversible error when it implicitly applied a presumption against relocation?

   B. Whether the trial court committed reversible error by failing to apply the "primary caretaker doctrine" when deciding whether to allow Mother and the Children to relocate to the Lehigh Valley, and whether to permit Mother to retain primary physical custody?

   C. Whether the trial court committed reversible error of law and an abuse of discretion by failing to provide sufficient weight to the Children's extended family relationships in the Lehigh Valley area, and denying the Children's opportunity to maintain those relationships?

D. Whether the trial court committed reversible error and an abuse of discretion as the trial court's conclusions regarding the relevant factors of section 5328(a) and section 5337(h) are unreasonable in light of the record and the court's other factual findings?

2. Did the trial court commit an abuse of discretion and an error of law by reducing Mother's periods of physical custody, where the reduction of Mother's periods of physical custody was not in the best interest of the Children pursuant to the factors provided by 23 Pa.C.S. § 5328(a)?

3. Did the trial court abuse its discretion and commit an error of law by failing to apply 23 Pa.C.S. § 5327(b), the presumption that custody shall be awarded to a parent over a third party, when the court awarded periods of physical custody to Father at times when Father was unavailable to care for the Children, where the court effectively provided periods of custody to non-parent third parties, over Mother?

4. Did the trial court commit an abuse of discretion and an error of law by entering a custody order which established an exchange time that [M]other was physically unable to meet, as evidenced by exhibits provided by [M]other at the custody hearing?

Mother's Brief at 7-8.

Our scope and standard of review is as follows.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F., III v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." ***Saintz v. Rinker***, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

In its opinion, the trial court presented a complete analysis of all the relevant factors enumerated at 23 Pa.C.S.A. § 5328(a) and § 5337(h).

Mother first contends that the trial court abused its discretion in awarding shared physical custody to Mother and Father and by not allowing Mother to relocate with Children to the Lehigh Valley area when Mother was unable to properly identify the new school district where they would reside and where Mother presented no information regarding the new school district.

The trial court considered all of the relocation factors laid out in 23 Pa.C.S.A. § 5337(h). The trial court found that, if Mother relocated, the extent of Father's involvement would be significantly reduced due to Father's work hours and the increased distance to the Lehigh Valley area. In addition, Dr. Shienvold opined that relocation is generally not preferred for younger children since the transitions tend to be more difficult. At trial, Dr. Shienvold testified that L.S. would have a more difficult time due to her vulnerable personality.

The trial court reasoned that, although the relocation to the Lehigh Valley area may enhance Mother's quality of life overall by reducing the financial strain and the amount of time spent traveling, Mother created the situation in which she now finds herself. When Mother and Father relocated to the Harrisburg area during their marriage, Mother continued to work in the Lehigh Valley area. Mother briefly attempted to look for a job in the Harrisburg area, but nothing came to fruition. After Mother and Father separated, Mother continued to travel to work at St. Luke's Hospital in Bethlehem, and began dating a man who lived in New Jersey. However, both Mother and Father created a life for the Children in the Harrisburg area, and Father intends to remain in the area with the Children.

The trial court determined that relocation would not enhance the general quality of life for the Children. The trial court found that the Children have resided in the Harrisburg area for their entire lives, and have friends, attend school, have medical providers, and are enrolled in activities in the area. The trial court noted that Mother never provided a specific area to which she intended to relocate in the Lehigh Valley area. At trial, Mother stated that she may relocate to the Saucon Valley, Greenwich Township, or Lopatcong school districts. Mother provided no testimony that any of the school districts was superior to school district the Children currently attend.

At the hearing, there was no testimony that the medical providers in the Lehigh Valley were superior to those the Children currently have.

However, the trial court noted that, since Mother works at St. Luke's Hospital, she may have more personal connections with medical providers in the Lehigh Valley area than in the Harrisburg area. The trial court also took under consideration Dr. Shienvold's opinion that relocation would not provide a significant benefit to the Children. Thus, the trial court ruled that Mother's relocation would not provide a significant benefit to the Children, and was not in the best interest of the Children.

Mother also argues that the trial court committed reversible error by failing to apply the "primary caretaker" doctrine when deciding whether to allow Mother and the Children to relocate to the Lehigh Valley area, and whether to permit Mother to retain primary physical custody.

However, the trial court correctly found that Mother cites to outdated case law decided prior to the enactment of the Custody Act to bolster her claim. The trial court acknowledged that Mother had historically been the parent who attended to the Children's medical and educational needs when considering the best interests factors. However, following the enactment of the Custody Act, the trial court was not required to give weighted consideration to Mother's prior role as primary caretaker when considering the best interest and relocation factors. *See*, *e.g.*, *W.C.F. v. M.G.*, 115 A.3rd. 323, 330 (Pa. Super. 2015).

Father conceded that, due to Mother's working part-time after the Children were born to the present, Mother had been able to schedule and

attend more medical and dental appointments. In addition, Mother is able, due to her part-time job schedule, to be involved at the Children's school during the day. However, Father has been, and continues to be, in the Children's lives. The record shows that Father has always been involved in the Children's activities, attends their recitals, attends medical appointments when he can, and attends school functions. Moreover, the trial court properly acknowledged the parental duties that the parents perform on behalf of the Children and the trial court properly recognized that both parents performed parental duties to the fullest extent possible in light of their respective employment. Thus, the trial court was not required to consider the primary caretaker doctrine in awarding shared physical custody to the parents.

The trial court did properly consider each parent's involvement in the Children's lives and did not err in granting Father and Mother shared physical custody of the Children.

Mother also argues that the trial court did not consider the Children's extended family relationships in the Lehigh Valley. The trial court found that Mother correctly stated that one factor Pennsylvania courts have considered in denying a request for relocation is a child's strong relation with extended family. However, Mother fails to cite any case law in which a child's relationships with extended family was a *deciding factor* in granting a request.

In this case, the Children already see their maternal and paternal grandmother and their maternal great grandmother regularly. Although the other relatives reside in the Lehigh Valley area, the trial court found no evidence that the Children's contact with them would increase if Mother relocated. Even when children have extended family in the proposed relocation area, the court does not automatically permit the requesting party, Mother in this case, to relocate.

The fact that the Children's grandmothers reside in Bethlehem is not *alone* satisfactory to grant Mother's relocation request. The Children currently see Mother's mother and father on a regular basis while they reside in Harrisburg. Moreover, not all of Father's family resides in the Lehigh Valley area. Father testified that his father and the rest of his paternal family reside in Pittsburgh. Therefore, Mother's argument that the trial court ignored the custody factor regarding extended family is meritless.

With regard to relocation, Mother also argues that the trial court committed reversible error and abused its discretion regarding the relevant factors of section 5328(a) and section 5337(h) as unreasonable in light of the record and the court's other factual findings. Mother argues that the trial court's analysis of the factors was similar to the trial court's opinion in ***J.R.M. v. J.E.A.***, 33 A.2d 647 (Pa. Super. 2011). This Court noted in ***J.R.M.*** that the trial court based its decision almost exclusively on the fact that the

-13-

child was breastfeeding and on the parties' communication difficulty and failed to consider any other factors.

In direct contrast, the trial court in this case specifically considered each factor under both section 5328(a) and section 5337(h). The trial court found that, as to custody factor (3), both parties performed parental duties for the Children. As to custody factor (5), the trial court noted that both parties had family in the Lehigh Valley, but that Paternal Grandmother testified that she was willing and available to assist with care for the Children in the Harrisburg area. As to custody factor (10), Mother was the parent who attended the Children's medical and educational appointments in light of the fact that since the Children were born, she usually worked at most two or three days a week. However, Father had attended appointments when he was able in light of his full-time employment. Both parties attend to the daily needs of the Children. Both the trial court and Dr. Shienvold found that Father is actively involved in the Children's lives and attends all activities on the days he is available. As to custody factor (12), the trial court was required only to consider the parties' abilities to care for the Children or abilities to make appropriate child care arrangements. While Mother wants to penalize Father because he works a full time job while she works only two or three days per week, despite both Children being in school, this Court has held that a party's "work schedule may not deprive [him] of custody if suitable arrangements are made for the child's care in his

. . . absence." ***Johnson v. Lewis***, 870 A.2d 368, 374 (Pa. Super. 2005) (citation omitted).

As to relocation factor (1), the trial court noted that both parties were significantly involved in the Children's lives. Although Mother testified that Father was not significantly involved in the care of the Children until he commenced the custody action, Dr. Shienvold and the trial court found that Father is actively involved in the Children's lives and attends all activities on the days that he is available. As to relocation factor (2), Mother seems to completely ignore Dr. Shienvold's testimony regarding the impact a relocation would have on the Children. The trial court noted that Dr. Shienvold testified that transitions are more difficult for younger children. L.S. would have a harder time with the transition due to her vulnerable personality.

As to relocation factor (3), Mother underestimates the negative impact a relocation would have on Father's relationship and level of contact with the Children. Both Father and Dr. Shienvold have testified concerning Father's high involvement in the lives of the Children. If Mother were to relocate, there would be no way for Father to maintain the same relationship he currently has with the Children. Father would not be able to spend the same quality time that he currently spends with the Children and would not be able to attend the Children's various extracurricular activities.

As to relocation factor (6), there would be some benefits for Mother should she be permitted to relocate to the Lehigh Valley area. However, these factors would not have a positive effect on the Children. Mother states that it is important that she maintain her employment at St. Luke's Hospital in Bethlehem, rather than assuming full-time and potentially more lucrative employment in the Harrisburg area. While Mother argues that she would spend more time with the Children if she moved to Bethlehem, Father would get less time. In addition, if Mother would reside with her paramour, P.P., they would be sharing living expenses; however, the relationship between Mother and P.P. is unstable—both Mother and P.P. testified that, if Mother could not relocate, their relationship would be in jeopardy.

In addition, Mother's financial issues would not be completely remedied simply by living with her paramour. While Mother noted that she could not continue to reside in her current home, she offered no definitive budgetary evidence supporting her claim. The trial court did not ignore Mother's testimony concerning her financial issues and acknowledged that, should Mother relocate, she would no longer have to make mortgage payments. The trial court further noted that, while relocation may reduce Mother's financial strain and amount of time Mother spent travelling, the court could not ignore that Mother created her current situation. After the parties separated, Mother continued to travel to the Lehigh Valley area for work and began her relationship with P.P. in disregard of the fact that she

and Father created a life in the Harrisburg area, where Father intends to remain. In addition, Mother is very active in the Children's schooling in Harrisburg and with friends in her neighborhood and in the PTA. The trial court found Mother's argument that she has no friends or life in Harrisburg unpersuasive.

As to factor (7), the trial court properly determined that the relocation would not significantly enhance the Children's lives. The court noted that the multiple school districts in the proposed relocation area are comparable to the Children's current school district; that the Children would not have access to better medical providers; and that the Children have friends in the Harrisburg area. The Children already spend time with extended family when Mother is in Bethlehem. Finally, Dr. Shienvold recommended that Mother not be permitted to relocate with the Children. Dr. Shienvold testified that there is no significant benefit to the Children in relocating, and that the Children are thriving in Harrisburg. Thus, the trial court considered all of these factors when considering the best interests of the Children.

Based on the relevant custody and relocation factors under sections 5328 and 5337 and based on Dr. Shienvold's recommendation, the trial court properly determined that an award of shared physical custody and the denial of Mother's relocation request was in the Children's best interests. Therefore, the trial court did not err or abuse its discretion.

In Mother' second issue she contends that the trial court committed an abuse of discretion and error of law by reducing Mother's periods of physical custody, and that the reduction of Mother's custodial periods was not in the best interest of the Children pursuant to 23 Pa.C.S.A. § 5328(a).

In this case, the trial court did consider Dr. Shienvold's testimony and determined that it is in the best interests of the Children for the parties to equally share physical custody, especially where Father's circumstances have changed since he and Mother entered into the prior custody agreement. The trial court noted that it believed the custody order essentially effectuates Dr. Shienvold's recommendation and serves the best interests of the Children. Therefore, the trial court properly considered Dr. Shienvold's recommendation.

The trial court determined that it is in the best interests of the Children for Father to exercise custody during his drill weekends in order to maximize his custodial time with the Children as he works from 6:00 a.m. until 3:00 p.m. While the prior custody schedule delayed the start of Father's custodial time period until Sunday evening, Father is permitted to have custody on drill weekends whereby his significant other, C.P., and Paternal Grandmother are available to watch the Children, just as Maternal Grandmother and Mother's significant other are available to watch the Children on weekends that Mother works. In addition, Father's schedule has changed whereby he is now off from work on alternating Wednesdays and is available to provide

direct supervision of the Children. Thus, since Father is available to spend more quality time with the Children, the trial court did not err in awarding Mother and Father shared physical custody.

In Mother's third issue, she contends that the trial court awarded custody to a third party, and thus 23 Pa.C.S.A. § 5327(b) is applicable. Mother cites **Wiseman v. Wall**, 718 A.2d 844 (Pa. Super. 1998), in support of the position that Father should not be awarded custody on the Saturday overnights during his drill weekend as he has to work on Sunday for a few hours.

The trial court found that **Wiseman** can easily be distinguished. In **Wiseman**, the Children were spending long periods of time in daycare or with Father's girlfriend. In this case, the Children would be spending five or six hours in the care of Paternal Grandmother or Father's girlfriend on one day each month. Thus, the change is in Children's best interests because the Children get to spend more quality time with Father. In addition, Father's additional time on alternating Wednesdays will be spent with the Children as Father does not work on alternating Wednesdays.

While Mother argues that the trial court's order would reduce the amount of time Mother's extended family spends with the Children, it would only reduce Mother's custodial time three days each month. Therefore, the trial court did not award custody of the Children to a third party, and section 5327(b) is not applicable.

-19-

And finally, in issue four, Mother argues that the trial court committed an abuse of discretion and an error of law by entering a custody order which established an exchange time of 8:00 p.m. Mother states that she is unable to return to Harrisburg for custody exchanges.

The record shows that the trial court was merely attempting to mediate the exchange issue on a temporary basis and made it clear that the issue would be addressed in the final order. Despite Mother's testimony that she has the flexibility to make her own schedule, she now argues that she is unable to meet in Harrisburg for timely custody exchanges at 8:00 p.m.

The issues concerning the exchange time when Mother is unavailable and the inappropriate holiday schedule are deemed moot based on the trial court's order of August 3, 2015, partially granting Mother's request for reconsideration.

The order of the Court of Common Pleas of Dauphin County, entered July 7, 2015, that denied Mother permission to relocate with her two children to the Lehigh Valley and granted Father shared physical custody and shared legal custody of the parties' minor children is affirmed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2016