J-A02033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| H.M.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| K.M. | |
| Appellant | No. 1067 MDA 2015 |

Appeal from the Order Entered May 22, 2015
In the Court of Common Pleas of Dauphin County
Civil Division at No: 2014-CV-05396-CU

BEFORE:  PANELLA, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 25, 2016**

Appellant, K.M. ("Mother"), appeals from the May 22, 2015 custody order entered in the Court of Common Pleas of Dauphin County.  Appellant argues the trial court abused its discretion or committed error of law by entering an order granting shared custody of H.S.R. ("Child") to Mother and Appellee, H.M.R. ("Father").  Mother also contends the trial court erred by denying Mother's motion to recuse.  Following review, we affirm.

Child was born on May 8, 2013, the product of a relationship between Mother and Father who never married but co-habitated until early June of

_____

[*] Former Justice specially assigned to the Superior Court.

2014.  At that time, Mother moved with the Child to the home of her parents and continued to reside there throughout these proceedings.

On June 14, 2014, Father filed an emergency petition seeking primary physical custody to Father and supervised partial custody to Mother.  That petition was denied by order entered the same date and marked the beginning of a series of hearings and court filings, including requests for protection of abuse ("PFA") orders filed by Mother and contempt petitions filed by Father.  A July 25, 2014 interim order memorialized an agreement between Mother and Father awarding primary physical custody to Mother and partial physical custody to Father.  A subsequent interim order entered on September 3 expanded the locations for Father's visits and called for psychological evaluations of the parties.  An assessment was completed by Raymond S. Klein, EdD., a licensed psychologist, who issued a report dated October 9, 2014.

The trial court conducted a hearing on October 17, 2014, at which Dr. Klein testified.  The hearing, scheduled to address custody as well as a petition for contempt filed by Father, resulted in an agreement incorporated in a December 22, 2014 order granting shared legal custody with primary physical custody to Mother and partial physical custody to Father and reflecting an intent to increase Father's periods of physical custody.

The trial court set a custody hearing for March 27 and April 30, 2015. On March 20, counsel for Mother filed a motion seeking recusal of the trial

judge. Mother's counsel explained that she had been counsel of record for Mother since December 9, 2014 when prior counsel withdrew. Motion for Recusal, 3/20/15, at ¶ 5. Counsel claimed, *inter alia*, that the trial judge disclosed in chambers on February 13, 2015, that a witness for Father had been an employee of the judge but "further commented that he would not say what type of employee the [witness] was." *Id.* ¶ 17. "On February 13, 2015, based upon only that scant information, His Honor inquired whether Mother would request recusal. As entered upon the record, Mother did not request recusal at that time based upon only that information." *Id.* at ¶ 18. Counsel expounded upon her reasons for recusal as discovered during trial preparation from March 11 through 16 and suggested that the information discovered gave rise to an appearance of impropriety. *Id.* at ¶¶ 19-27.

By order entered on March 25, 2015, the trial judge scheduled a hearing on the recusal motion to take place immediately before the March 27 custody hearing. At the March 27 proceedings, the trial court heard argument on the motion to recuse and explained its preliminary ruling denying the motion while reserving to counsel the right to renew her motion at the conclusion of the hearing. Notes of Testimony ("N.T."), Hearing, 3/27/15, at 1-34. The focus then turned to the custody issues for the balance of the March 27 proceedings. The hearing resumed on April 30. At the conclusion of the April 30 proceedings, Mother's counsel offered two additional exhibits in support of the recusal motion. The trial judge admitted

the exhibits and announced he would consider them. N.T. Hearing, 4/30/15, at 369-70.

By order entered May 22, 2015, the trial court granted shared legal custody and shared physical custody. Custody Order, 5/22/15, at 1-5. In its accompanying memorandum opinion, the trial court summarized the testimony presented during the custody proceedings and addressed the sixteen factors to be considered in awarding custody in accordance with 23 Pa.C.S.A. § 5328(a). Trial Court Opinion ("T.C.O."), 5/22/15, at 16-30. The trial court also explained its denial of the recusal motion, stating in part:

> The complaint was filed on June 10, 2014, and it took approximately nine (9) months to get it to a hearing based on the number of continuances, and collateral issues involved. Since Dauphin County only has three (3) judges to hear the high volume of family law matters, [Father's] counsel was concerned that another judge would not have adequate time to review the lengthy history of the case. The difference in perception between the parties is a major dispute in the case, and necessitates the need to resolve it quickly as opposed to kicking it down the line further.
>
> Mother's Motion for Recusal was denied because the [c]ourt does not believe there is an appearance of impropriety with regard to [D. D-B].[1] The [c]ourt has been involved in this case long before her involvement with Father became known at the February 3, 2015 PFA hearing. It was disclosed to counsel at that time who agreed there was no conflict. The issue was again raised at the February 13, 2015 contempt hearing and counsel

---

[1] At the time of the hearing, [D. D-B] was engaged to Father and was one of the individuals involved in transfer of the Child between Mother and Father. As will be addressed in greater detail herein, [D. D-B] was previously employed by the law firm with which the trial judge was affiliated in the year prior to his election to the bench.

again agreed there was no conflict. At no time did counsel inquire further as to the [c]ourt's familiarity with one of Father's witnesses. It appears this was just another one of Mother's attempts to delay the custody hearing and control Father's custodial time with [Child].

T.C.O., 5/22/15, at 14-15.

Mother filed a timely appeal from the May 22, 2015 order. Both Mother and the trial court complied with Rule of Appellate Procedure 1925. In her Rule 1925(b) statement, Mother raised six errors complained of on appeal. In its 1925(a) opinion dated July 17, 2015, which supplemented its May 22, 2015 opinion, the trial court addressed and rejected each of the six contentions. Trial Court Opinion ("Rule 1925(a) Opinion"), 7/17/15, 1-10.

In her brief filed with this Court, Mother identifies five issues for our consideration:

1. Did the trial court abuse its discretion or commit[] an error of law by awarding shared physical custody on an equal time basis when the Parties failed to meet this Court's four part criteria of *In* [*r*]*e Wesley J. K.*?

2. Did the trial court abuse its discretion or commit an error of law by failing to modify the Custody order in the best interest of the children?

3. Did the trial court abuse its discretion or commit an[] error of law by refusing to recuse himself upon Mother's timely motion?

4. Did the trial court abuse its discretion or commit an error of law by considering evidence not of record in the custody proceedings and outside of the record for its custody decision and order?

5. Did the trial court abuse its discretion or commit an error of law in making adverse conclusions against Mother of specific

circumstances where Mother was protecting herself from abuse and in rejecting evidence of abuse in awarding shared physical custody?

Mother's Brief, at 6-7. While the questions presented in Mother's brief do not mirror the errors complained of in her 1925(b) statement, they do incorporate the spirit, if not the language, of the 1925(b) issues.[2] Therefore, we shall address them.

We begin by setting forth our scope and standard of review.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*R.S. v. T.T.*, 113 A.3d 1254, 1257 (Pa. Super. 2015) (quoting *V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012)).

In her first two issues, Mother complains that the trial court abused its discretion or committed error of law by awarding shared custody and by

---

[2] By way of example, the phrase "best interest of the child" does not appear in Mother's 1925(b) statement but is the subject of the second issue presented in her brief. In light of the fact that the grant of shared custody requires a "best interest of the child" analysis, we do not find Mother's second issue waived.

failing to modify the custody order in the best interests of the Child. Because the best interests of the Child are central to both discussions, we shall address the issues together.

Addressing Mother's challenge to the shared custody ruling, the trial court rejected Mother's contention that the parties did not meet the legal criteria for shared custody, stating:

> The [c]ourt first notes that since the promulgation of the child custody factors enumerated in 23 Pa.C.S.A. § 5328, there is no longer a legal prerequisite for shared custody. The statute is very clear that the [c]ourt must consider the sixteen (16) statutory factors in making a determination of child custody, including shared physical custody.

Rule 1925(a) Opinion, 7/17/15, at 6. We agree. Section 5328(a) directs that the trial court "shall determine the best interest of the child by considering all relevant factors," including the sixteen enumerated in the statute, when "ordering **any** form of custody." 23 Pa.C.S.A. § 5328(a) (emphasis added).

Mother cites **R.S. v. T.T., supra,** in support of her contention that the trial court must consider not only the § 5328 factors, but also four factors set forth in **In re Wesley, J.K.**, 445 A.2d 1243 (Pa. Super. 1982), which this Court summarized as requiring "that 1) both parents are 'fit,'[3] 2) both

---

[3] With respect to stating the both parents be "fit," this Court in **Wesley, J.K.**, explained, "Both parents must be sane and capable of making rational child-rearing decisions. Both must be willing and able to provide love and care for their children." **Id.**, 445 A.2d at 1248.

desire continuing involvement with their child, 3) both parents are seen by the child as sources of security and love, and 4) both parents are able to communicate and cooperate in promoting the child's best interests." *Id.* at 1249. However, a reading of the enumerated factors in § 5328(a) reveals that the four "*Wesley, J.K.*" factors are fairly encompassed by the enumerated factors for awarding "any form of custody." 23 Pa.C.S.A. § 5328(a). The trial court addressed each of the § 5328(a) factors in its May 22, 2015 opinion, supplemented by its Rule 1925(a) opinion. Therefore, we reject Mother's assertion that the trial court failed to consider the relevant factors for shared custody.

In its opinion issued in conjunction with the May 22, 2015 custody order, the trial court recognized that "[p]ursuant to the current Child Custody Act, before making any custodial award, the [c]ourt must determine 'the best interests of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child,' including the sixteen (16) statutorily defined factors." T.C.O., 5/22/15, at 26 (quoting 23 Pa.C.S.A. § 5328(a) and citing *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011)). The trial court proceeded to consider each of the sixteen factors, finding:

> *(1)    Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.*
>
> Mother has been unwilling to agree to anything more than supervised visitation for father since the parties separated. This

- 8 -

is evidence by the filing of two (2) PFA actions, criminal charges, and Children and Youth allegations against father. Both PFA's and the Children and Youth reports were unfounded and unsubstantiated. The criminal charges are still pending, but of questionable merit. Despite the number of allegations lodged against father, he testified that he continues to encourage the child's relationship and contact with Mother.[4]

> *(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.*

Aside from Mother's unsubstantiated allegations of abuse by Father, there was no testimony of any abuse between the parties, or towards the child.

> *(3) The parental duties performed by each party on behalf of the child.*

Both parties testified as to their ability to perform parental duties on behalf of [Child]. Although Mother questions Father's ability to care for the child, the testimony indicates that father is capable of doing so, and has raised two (2) other children previously.

> *(4) The need for stability and continuity in the child's education, family life and community life.*

_____

[4] With regard to factor one, as well as factors two, nine, twelve, thirteen and fifteen, Mother contends the trial court's determinations are unsupported by the record and constitute an abuse of discretion. Mother's Brief, at 34-40. We disagree and conclude those conclusions are not unreasonable in light of the evidence presented in the testimony of the parties themselves as well as the witnesses who supported Father and those who supported Mother. While the testimony from those in "Father's camp" conflicted with testimony from those in "Mother's camp," it was up to the trial court, as finder of fact, to assess the testimony. Further, to the extent the statements in the trial court's opinion represent the trial court's credibility assessments, those credibility determinations are for the trial court, not this Court. *See, e.g., R.S.*, 113 A.3d at 1257.

Due to the highly contentious nature of this custody action, both parties need to work on maintaining stability and continuity for the sake of the child.[5]

*(5)    The availability of extended family.*

Mother currently resides with her parents, and has seven (7) siblings, most of whom still reside in the area.  Paternal Grandparents also live in the area.

*(6)    The child's sibling relationships.*

The child has two (2) half-siblings, [G][6] and [M].  [Child] sees [G] every Sunday when [Y] comes to Maternal Grandparents' home for dinner.  There was no testimony as to whether [Child] sees [M].

*(7)    The well-reasoned preference of the child, based on the child's maturity and judgment.*

The [c]ourt did not interview [Child] due to his young age.

*(8)    The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.*

There are no allegations that either party has attempted to turn the child against the other parent, to date.  However, the [c]ourt is concerned that this will occur in the future if the parties do not receive professional intervention.

_____

[5] Mother suggests the trial court's statement with respect to the fourth factor represents a "failure to assess" that constitutes "an error of law." Mother's Brief, at 38.  We disagree.  The statement reflects the trial court's assessment of the relationship between the parties and the efforts required going forward, to serve the best interest of Child.

[6] [G] is the son of Father and Mother's younger sister, [Y].

*(9)  Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.*

Mother has a significant history of mental illness, which appears to remain unresolved.  In fact, Mother denies any mental health concerns.  If it continues to be untreated, there is a question as to whether Mother would be able to maintain a stable and consistent relationship with the child.

*(10)  Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.*

Mother has been unemployed since October 2013 and is available to care for the child full-time.  Father is self-employed, and has flexibility to adjust his hours around the child's needs.

*(11)  The proximity of the residences of the parties.*

Both parties reside in Harrisburg and are approximately twenty (20) minutes apart.

*(12)  Each party's availability to care for the child or ability to make appropriate child-care arrangements.*

Father testified as to their availability to care for [Child], and his ability to make child-care arrangements.  Mother testified that she is always available to care for the child.  There was no testimony from Mother as to what child-care arrangements would be made in the event she is unavailable to care for the child.

*(13)  The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.*

There is a significant level of contention between the parties due to the fact that they have two (2) very different perceptions of reality.  Dr. Klein testified that both parties need to undergo individual counseling to address their personal issues.  He further indicated that Mother needs to address her past traumas,

as those tend to distort her perception of reality in regard to Father. Dr. Klein stressed that the "linchpin" to effective parenting is for Mother's history to be examined through psychotherapy.

*(14) The history of drug or alcohol abuse of a party or a member of a party's household.*

There is no substantiated history of drug or alcohol abuse by either party.

*(15) The mental and physical condition of a party or a member of a party's household.*

Mother has a history of mental illness, which has been the primary issue in this highly contentious custody dispute. As stated above, Dr. Klein stressed that Mother has suffered past traumas that cause her to distort reality. Mother's mental health issues became evident throughout all of the proceedings — including the PFA hearings.

(16) *Any other relevant factor.*

No other significant factors were considered.

T.C.O., 5/22/15, at 27-30.

In its Rule 1925(a) opinion, the trial court expressed its belief that "it was extremely fair and spent a considerable amount of time agonizing over the sixteen (16) custody factors." Rule 1925(a) Opinion, 7/17/15, at 1. It is clear from the trial court's analysis that while one parent or the other "measured" higher for some factors, the overall weighing of the factors supported the continuation of shared legal custody and the grant of shared physical custody.

Accepting the findings of the trial court as supported by competent evidence of record based on our review, we do not find the trial court's

conclusions granting shared custody to be unreasonable. Further, we do not find that the trial court's conclusions constitute error of law. Therefore, Mother is not entitled to relief on either of her first two issues.

In her third issue, Mother complains that the trial court abused its discretion or committed error of law by denying her motion for recusal. When confronted with a recusal motion, a judge must conduct a two-tiered analysis:

> First, whether the Justice would have a personal bias or interest which would preclude an impartial review. This is a personal and unreviewable decision that only the jurist can make. Second, whether his participation in the matter would give the appearance of impropriety. To perform its high function in the best way, justice must satisfy the appearance of justice.

*Goodheart v. Casey*, 565 A.2d 757, 764 (Pa. 1989) (citations, internal quotation marks, italics and brackets omitted). "The party who asserts a trial judge must be disqualified bears the burden of producing evidence establishing bias, prejudice, or unfairness necessitating recusal, and the decision by a judge against whom a plea of prejudice is made will not be disturbed except for an abuse of discretion." *Commonwealth v. Whitmore*, 912 A.2d 827, 834 (Pa. 2006) (internal citations omitted).

Mother argues that the trial judge's relationship with one of Father's witnesses created an appearance of impropriety warranting recusal. Mother does not allege any actual bias, prejudice, or unfairness on the part of the trial judge. In her brief, she suggests that the relationship between the

- 13 -

judge and Father's witness translates into the witness coming into court "with more credibility than any other witness." Mother's Brief, at 45.

The trial court addressed its denial of the recusal motion in both its May 22, 2015 Opinion and its Rule 1925(a) Opinion. In the May 22, 2015 Opinion, the trial court explained:

> On March 20, approximately five (5) weeks after the February 13, 2015 contempt hearing, and one (1) week before the scheduled custody hearing, Mother, through counsel, filed a Motion for Recusal. Even though the issue was placed on the record twice with no objection from counsel, Mother's Motion requested the Court's recusal due to his familiarity with [D. D-B]. The Motion alleged an appearance of impropriety because [D. D-B] had worked in the law firm as a paralegal to which the Court was of-counsel prior to being elected to the bench. It was alleged that because of her employment with the law firm, the [c]ourt "trusted her and values her opinion and had a special relationship." Mother also accused the [c]ourt of failing to disclose information to his knowledge of [D. D-B] as an employee. However, after disclosing the familiarity, neither counsel asked for any additional information.
>
> Due to the eleventh-hour filing of Mother's Motion for recusal, Father's objection, the amount of time this case had been outstanding and the amount of involvement this [c]ourt had with the case prior to learning of [D. D-B]'s relationship with Father, this [c]ourt was placed in a difficult position, and decided to address the Motion prior to the commencement of the custody hearing on March 27, 2015.
>
> Before hearing argument from counsel on the Motion, the [c]ourt addressed the circumstances surrounding his familiarity with [D. D-B]. She was employed by the law firm for which [the trial judge] was of counsel, and had worked there for approximately one (1) year. [The trial judge] did not hire or supervise [D. D-B], and merely paid a pro rata share on rent and overall personnel expense, which included [D. D-B], as well as a number of other personnel in the office. After the law firm separate, [D. D-B] worked primarily for [the trial judge] and Geoffrey McInroy, Esquire. Since [the trial judge] was engaged

- 14 -

in campaigning during this time, there was not a lot of time spent in the office which would have led to any "special relationship" as alleged in the Motion.

[D. D-B] has two (2) children, one of which is autistic, and during her employment with [the trial judge] and [Attorney] McInroy, she had an issue with the father of her children and wanted to file for custody in Northumberland County. She had filled out the paperwork in her capacity as paralegal, and had asked if one of the attorneys could review and sign it for her. After discussion, it was determined that [the trial judge's] schedule at the time was more flexible that Attorney McInroy's. Therefore, the [c]ourt reviewed and signed the pleadings, and also agreed to represent her interest relative to the children if necessary. [The trial judge] appeared with [D. D-B.] before the master in Northumberland County twice wherein an agreement was reached regarding the child's medication.

The [c]ourt stated that its involvement with [D. D-B]'s custody case was primarily done because her issues with the children were causing problems and disturbances within the law firm. The [c]ourt stated that its involvement with [D. D-B], as a witness to a custody action and not a party, would not cause her testimony to be given and more or less credibility than any other witness.[7]

_____

[7] Again, Mother contends the relationship between the trial judge and D. D-B bolsters the witness' credibility. However, the trial judge, noting the tension in the office resulting from D. D-B's custody matter, commented:

So in the spirit of full disclosure, I don't think that's a – I mean, the negativity that came out of that, and I know she wanted to come to the county afterwards and it was an offer I couldn't make to her, and I told her because her personal life had disrupted her professional responsibilities. So, if anything, she might have ill-will to me. I don't know. I just wanted to give you that full setup. I didn't want you to think this was some sort of wonderful working relationship; it was a strained one at that.

N.T., 3/27/15, at 24.

- 15 -

In support of Mother's motion for recusal, [Mother's] counsel made arguments based on a number of assumptions that come from working in a law firm. There were no facts articulated that would support an appearance of impropriety by the [c]ourt. Even after the [c]ourt explained the stress and tension that [D. D-B]'s employment caused the law firm, [Mother's] counsel continued to argue the existence of an appearance of impropriety based on her employment there. [Mother's] counsel also argued that [D. D-B] was "essentially" a party to the case because of her relationship with Father. However, testimony revealed that even though Father intends to marry [D. D-B] in the future, she is still going through a divorce. Further, the parties do not live together, and there was no testimony of any plans to do so in the immediate future.

On the other hand, Father's counsel was adamantly opposed to the recusal and did not believe there was a legitimate basis for the request. Father's counsel argued that the only reason [D. D-B] became involved in the custody dispute was by necessity, and would strictly be a witness for the custody exchanges, or lack thereof, between the parties. Father does not drive, and after the second PFA, Father's contact with Mother was restricted, and he was forced to rely on third-party transports for the custody exchange. Therefore, [D. D-B] was put into a position where she was the one who had direct contact with Mother during the custody exchange, or was the person attempting to contact Mother when she failed to appear for a custody exchange.

Father's counsel's primary concern was the further delay a grant of the recusal would be. The complaint was filed on June 10, 2014, and it took approximately nine (9) months to get it to a hearing based on the number of continuances, and collateral issues involved. Since Dauphin County only has three (3) judges to hear the high volume of family law matters, counsel was concerned that another judge would not have adequate time to review the lengthy history of the case. The difference in perception between the parties is a major dispute in the case, and necessitates the need to resolve it quickly as opposed to kicking it down the line further.

Mother's Motion for Recusal was denied because the [c]ourt does not believe there is an appearance of impropriety with regard to [D. D-B]. The [c]ourt has been involved in this case long before her involvement with Father became known at the February 3,

> 2015 PFA hearing. It was disclosed to counsel at that time who agreed there was no conflict. The issue was raised again at the February 13, 2015 contempt hearing and counsel again agreed there was no conflict. At no time did counsel inquire further as to the [c]ourt's familiarity with one of Father's witnesses. It appears this was just another one of Mother's attempts to delay the custody hearing and control Father's custodial time with [Child].

T.C.O., 5/22/15, at 12-15 (footnotes omitted).

In its Rule 1925(a) Opinion, the trial judge reiterated his position that denial of the motion was appropriate and cited Pa.R.C.P. 1915.4, which calls for prompt disposition of custody cases. Rule 1925(a) Opinion, 7/17/15, at 1-5. The trial court also recognized the limited testimony offered by the witness in question and stated her testimony "was not a driving factor for the ultimate decision reached by the [c]ourt." *Id.* at 5.[8]

Having reviewed the record and the reasons stated by the trial court, we cannot see that the trial judge's conduct would create a perception in reasonable minds that there was an appearance of impropriety.[9] The trial judge thoroughly explained his prior relationship to D. D-B and why that

---

[8] The testimony offered by the witness spanned 20 pages of the 371 pages of testimony from the March 27 and April 30, 2015 proceedings. Her testimony focused, as the trial court suggested, on her involvement in the custody exchanges. N.T., 4/30/15, at 192-211.

[9] "The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated this Code or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament, or fitness to serve as a judge." Pa. Code of Judicial Conduct, Canon 1, Rule 1.2, cmt 5.

relationship would have no effect on his decision in this case. This was especially so given the witness's limited role in these proceedings. Cognizant of the burden borne by the proponent of a motion to recuse and our standard of review, we find no abuse of discretion on the part of the trial court in denying Mother's motion. We also note "[a] party seeking recusal or disqualification [is required] to raise the objection at the *earliest possible moment*, or that party will suffer the consequence of being time barred." ***In re Lokuta***, 11 A.3d 427, 437 (Pa. 2011) (emphasis added) (quoting ***Goodheart***, 565 A.2d at 763). Although not the basis for the trial court's decision to deny Mother's motion, Mother's delay in raising this recusal issue is troubling. When advised by the trial court at the February 13 conference of the trial judge's prior relationship to D. D-B, Mother did nothing further to inquire about the relationship until precipitously close to the March 27 proceedings when Mother filed her motion. It was incumbent upon Mother to satisfy herself as to the extent of this relationship when first informed of it by the trial court. Delay in raising the issue does not weigh in Mother's favor. Mother's third issue fails.

In her fourth issue, Mother contends the trial court abused its discretion or committed error of law by "considering evidence not of record in the custody proceedings" in deciding to award joint legal and physical custody to Mother and Father. Specifically, Mother argues the trial court "opine[d] that he is concerned with Mother's mental health and her need for

counseling and psychotropic medication." Mother's Brief, at 57. Mother asserts the trial court "considered and relied upon Mother's need for counseling, the PFA transcript and Father's unfounded statements with no other evidence in support thereof." *Id.* In support of her argument, Mother relies on cases in which the trial court used the results of independent Internet research in making its determinations. We find the cited cases inapposite. For instance, in *M.P. v. M.P.*, 54 A.3d 950, 955 (Pa. Super. 2012), this Court determined the trial court erred by relying on its own Internet research regarding the Hague Convention and the possible lack of comity in Ecuador. Likewise, in *Ney v. Ney*, 917 A.2d 863 (Pa. Super. 2007), the trial court erred by using the results of its own Internet job search to discount father's claim that his reduction in earnings was involuntary. Here, the trial court did not conduct independent research. Rather, it used testimony presented in proceedings involving Mother and Father before the trial court. As the trial court explained:

> In making a determination of child custody, the [c]ourt must consider the sixteen (16) enumerated factors of 23 Pa.C.S.A. § 5328. One of those factors is "any other relevant factor." In this case, Mother testified to custody issues in both PFA proceedings. She also testified as to the alleged incident that led to the filing of the second PFA during the custody hearing. This [c]ourt heard all of the testimony in both PFA proceedings, and both days of the custody hearing. As Mother's testimony during both PFA proceedings related to custody, this [c]ourt considered that testimony as part of "any other relevant factor." In addition, the testimony from the PFA proceedings, combined with the testimony in all of the custody proceedings, was relevant to the overarching issue of this case — Mother's mental health status. Father has raised this issue in numerous

pleadings, and on the record in a number of proceedings. The [c]ourt cannot ignore a significant factor that has been raised by a party. Therefore, the [c]ourt properly considered all of the evidence between the parties in making a determination of child custody.

Rule 1925(a) Opinion, 7/17/15, at 8. Further, at the March 27, 2015 hearing, when reference was made to a contempt hearing, the following exchange took place between Mother's counsel and the trial court:

Mother's Counsel: [J]ust to clarify. In making your decision with regards to custody are you considering the testimony throughout all of the proceedings that – or are we starting from today and then April 30th, was my understanding, or –

Trial Court: Well, generally it's primarily focused on what's presented here. But I can't tell you that I'm going to be able to block out procedures and testimony that occurred at the earlier proceedings . . . . [] I can't tell you I'm not going to remember something from and earlier proceeding.

Mother's Counsel: [T]hat's fine, Your Honor. I was just trying to be clear so I knew where we were going. Thank you, Your Honor.

Trial Court: You're welcome.

N.T., 3/27/15, at 66-67.

Mother's counsel did not register any objection to the trial court's expectation of considering testimony from earlier proceedings and, in fact, stated, "That's fine, Your Honor." *Id.* at 67. Even if not waived for lack of objection, we nevertheless find no abuse of discretion or error of law in the trial court's consideration of the challenged evidence. Mother's fourth issue does not provide any basis for relief.

In her fifth and final issue, Mother claims the trial court abused its discretion or committed error of law by "making adverse conclusions against Mother" and "rejecting evidence of abuse" in awarding shared custody. Despite identifying the issue in her Statement of Questions Involved, Mother did not address the issue in her brief. Therefore, it is waived. Pa.R.A.P. 2119(a); **Green v. Green**, 69 A.3d 282, 285 n.3 (Pa. Super. 2013).

Order affirmed.

Judge Panella joins this memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/25/2016